Patel v. Petitioners, and we will hear first from Mr. Kurzban. Good morning. May it please the Court, I am Kurtzban. And with us today are my clients, Patel, sitting in the first row here. I'd like to begin by talking about the jurisdictional issue, and then talk somewhat about the materiality question, because the materiality question really wasn't fully briefed. There was a letter brief at the very end in the panel's opinion, and that briefing, as far as I understand it, never addressed the full force of the effect of the common law on the question of materiality. Let me first turn, if I may, to the issue of jurisdiction. The Court has in front of it now three briefs, the amicus brief, the government's brief, and our brief, and all of them seem to agree that there is jurisdiction here for nondiscretionary decisions. Can I ask you what may be the most obvious question with the most obvious answer in the world, but I can't quite get my head around it. If the statute says any judgment regarding the granting of relief, and we all agree, including the Ninth Circuit, that a judgment includes the formal order of some adjudicatory body, why aren't the IJ's decision and granting of relief, as I look at those opinions, the IJ, first page of the IJ opinion says application, you know, adjustment of status under 1255. You look at the last page, it says denied. BIA decision, application, adjustment of status under 1255, petition dismissed. Why aren't those pieces of paper judgments regarding the granting of relief? And that's a question that certainly plagued the courts on this issue, but I think, Your Honor, if you look at B-2, you're talking about B-1, 242a-B-1, and 242a-B-2, B-2 says other decisions. So if you read it the way you're suggesting, there would be no purpose for B-2 because then anything that's included in the judgment. The second thing… Well, well, okay, so hold on. So, but I mean, B-2 could plausibly be read just as a kind of a broad sort of catch-all kind of clause, right? So let's talk about B-1. I mean, why isn't, why isn't B-1, why isn't the piece of paper that the IJ issued and the piece of paper that the BIA issued a judgment regarding the granting of relief under 1255? They say on the face of the documents that that's what they are, basically. It obviously is a judgment, but I think what they mean in B-1 is they mean the ultimate judgment, that is the act of grace. You see, if you look at all those statutes, the adjustment statute, the cancellation statute, the statutes that are mentioned there are all statutes where even after you go through all the requisites, you qualify and so forth, at the very end, the immigration judge and the board have the right as a matter of grace to simply say we're not going to give it to you. Isn't the, counsel, isn't the problem with that, that when we're referring to judgments regarding the granting of relief, Congress put in the word any, and we have said and the Supreme Court has said repeatedly any means all, not just those dealing with matters of grace. My question, Mr. Kurzban, is what do we do with the word any? Doesn't any mean all? And if indeed it means all, I don't know how we could accept the limitation that you're putting on it. Well, I think any, in this context, it means any judgment with respect to the ultimate act, and that is the act of grace here, which is, it says any judgment regarding, first of all, the grant of relief. But regarding, regarding hurts you, regarding, I'm here, regarding hurts you, regarding is a broader word, regarding is respecting or about. That means that it's more than just the decision that you're talking about, the act of grace. It's any, it's any judgment regarding the granting of relief, right? Any judgment regarding these sections, and ultimately these sections go to, in other words, they could have said any judgment. And what any, any, any judgment regarding can be whether you're eligible for it in the first place. I don't think that's what they meant, and if they meant that, the second B-2 would have no meaning. No, no, B-2 is a catch-all, and there's no doubt that there is a discretionary decision, as you call it, a decision of grace that is a component of one, of subsection one, but the language that Congress used was any judgment regarding. That's broader than what you're talking about. Well, but how, what work at all would B-2, other than saying, Judge Pryor, other than saying that it is somehow appended to one? I mean, in other words, it seems clear that it's either a judgment that is concerning these sections, or it's some other issues, and this Court's jurisprudence has said those other issues may be things like extreme hardship. I think the way you're reading it, everything would be subsumed under one. There would be no need to have... You're reading it, everything is covered by two. No, because there are issues that are non-discretionary. That's the whole point, that one goes to the issue of the ultimate act of grace, and this is consistent, by the way, with years of jurisprudence in the Supreme Court, J.V. Boyd, cases that talk about I.N.S.B. Wang, cases that talk about the ultimate act of grace, the ultimate act of making a determination, and with respect to those cases, they're saying that, you're barred, you can't, there can't be any review of those acts of grace. If you read the way you're saying it, then what it would mean is there's no review at all of any of these decisions, and I don't think, no circuit, quite frankly, has ever read that everything is barred if it's under 245 or 1182, so... Oh, can you hear me over here? Over here, over here, thanks. No, that's okay. Are you familiar with the Corapati case from this Court? Yes, I am. Doesn't that case, we, of course, sitting on Bonk, it may not matter what that case says in the end, but doesn't that case support your view, it supports a different view than you have, I think it supports Judge Pryor's contention that these two statutes work together and that two is a catch-all for one, but doesn't it support your view that some determinations can be reviewable before the final determination? It actually completely supports our view, and here's why. If you read B1 as an act of grace, and that that's all there, that everything else is still reviewable, then you go to B2, and B2 says any other decision of the Attorney General in the discretion of the Attorney General, right? It has to be something that's in the discretion of the Attorney General. Corapati is an interesting case because Corapati says it doesn't fall under B1, because that's an act of grace, it doesn't fall under B2 because it's not a discretionary act, that is the review of a regulation, the violation of a regulation is not a discretionary act under B2. That's why this Court found that there was review under, for Mr. Corapati, because you That is whether or not the agency follows a regulation is a non-discretionary decision. B1 and B2 were really designed to limit the review of discretionary decisions. Just like in this case here, this case has no discretionary aspect to it. That is, it comes in the context of whether or not somebody is admissible or inadmissible. This Court has traditionally reviewed those issues, and I think, Judge Pryor, under your theory, this Court would not be able to review a deportation order, because if in fact We would be able to review questions of law, right? Indeed. Yes, that's the exception to the jurisdiction strips. And it doesn't trouble me at all that we have to respect a strip of jurisdiction that Congress has specified. The question is, what does it mean? What do the words mean? Mr. Kirshman, we appreciate you helping us with this case. I know you wrote the treatise, so I just want to ask you to your knowledge, does the term judgment ever in this statute mean factual findings? In other words, judgment of fact. I mean, is it ever used in that manner to your knowledge? I think it means the ultimate determination. That is, the ultimate determination with respect to certain parts of the INA. And keep in mind, there are other sections, like Section 209, adjustment under Section 209. There is what we call MACARA adjustment. None of those are listed here. So there are other acts of grace, if you will, that are not listed here. They specifically only listed these sections, and they listed these sections for the purpose of saying, these are the ones that we generally regard as ultimate decisions. Under 209, and I apologize, maybe I'm making this too confusing. Under Section 209, you can adjust your status. It's not an act of grace. In other words, if you're eligible, you get adjusted. Under MACARA, it's not an act of grace. If, in fact, you're eligible, you get adjusted. Here, they specifically took five sections of the Immigration Act and said, these are sections where there is an act of grace at the very end. In other words, even if you qualify on all the non-discretionary grounds, if we, just like in J.V. Boyd, just like in I.S.P. Wang, even if you otherwise qualify, that we will not review the Board's decision because it's a pure act of grace. So I think it's significant that they went back and cited these sections as opposed to other sections. And the other sections also are adjustment sections, adjustment where somebody can become a lawful permanent resident. They didn't cite those because those have no act of grace. I don't know if that... It did. Just to follow up, in Mr. Patel's case, for example, one of the things that he needed to prove in order to show he was admissible was that he was present in the country on a certain date in December of 2000, December 21st. If all the evidence showed that he was here, but the I.J. nevertheless said he wasn't here, that decision, that factual finding would be reviewable, would it not? Our position, Judge Martin, is very clear. These were non-discretionary decisions. Whether or not somebody is eligible for adjustment, ultimately, that is, did he make a false representation of U.S. citizenship or not, that's a factual, it's both a legal question and a factual question. It's not discretionary. And so that's reviewable. It's always been reviewable. It's been reviewable before B-1 and B-2, and it's always been reviewable afterwards. And that means all questions of law and fact. If it's a non-discretionary decision, this will be treated the way it would normally treat any legal and factual question. That is, it's reviewed under the noble review as to legal questions, and it's reviewed under substantial evidence as to factual. And in that regard, you've talked some about the IJ order, the transcript of the oral ruling of the immigration judge in this case. And in the first paragraph, for example, the immigration judge says that the respondent conceded removability. As a matter of fact, if that were not true, that would be reviewable. Absolutely. And so within this order that you all have talked about in terms of being a judgment, there are various things that have traditionally been reviewable as findings of fact or decisions of law, right? Absolutely. And in fact, the Immigration Nationality Act lays out a whole system under which under 242 A-5 and B-9, 242 B-9 says all questions of fact and law are reviewable. And in fact, what they intended to do is have all those questions kind of crammed in for review purposes. So 242 B-9 is the clearest statement, and the government I know agrees with us and cites 242 B-9 and 242 A-5 as the sections that clearly say all issues within a deportation hearing are reviewable. What B-1 and B-2 do is they carve out a specific exception with respect to either acts of grace or discretionary decisions that are ones in which the Attorney General specifies. And by the way, B-2 I think is narrowly construed as a result of Kupana. When we get to by the way and we're over our time, it's time to heal the podium. You've got your full five minutes reply. Thank you, Your Honor. Sorry. It's okay. Mr. Stewart. Thank you, Your Honor. May it please the Court. I'm Scott Stewart on behalf of the Attorney General. I'd like to get right to the point that Judge Newsom and some other judges, some of your other, were asking about judgment, what it means here, why it doesn't bar factual findings. In response to the first three questions pressed by the Court, the issues presented here are reviewable. Focusing in on that particular word judgment, judgment can indeed mean the final decision of the tribunal. So just on that score, are the pieces of paper on which the IJ's decision was transcribed and the BIA's decision was memorialized, are those judgments? Not in the meaning of. I mean, I thought the Black's Law Dictionary makes clear that the sort of the written opinion of an adjudicatory body is a judgment. Even the Ninth Circuit says that that's a judgment. The Ninth Circuit did a good analysis of this in Montero-Martinez, Judge Newsom, where he did acknowledge, look, judgment can mean the final decision by a tribunal, but it can also mean a judgment call, an exercise of discretion. Right, but so why isn't this like a traditional judgment? This is the kind of judgment that we all think about when we hear the word judgment. It's like the written opinion of an adjudicatory body. Because the next step is, well, what is the context and what does that tell us about the media here? It's preceded by the word any. Correct, Your Honor. We agree with that. Any judgment. Do you want to exclude what is the ordinary legal meaning of the term? We want to just honor the context in which the term is used, Your Honor. But just to be fair, so it's preceded by the word any. It is followed by the word regarding. And so just cure me of this fixation with the face of the IJ's and the BIA's decision, because if you were to ask the document, what are you regarding? What are you about? It says on page 1, application, adjustment of status under 1255. I don't understand how it could be about anything else. It focuses on the meaning of judgment. And if I can explain why in context that means more than or means something different than the standard court order. In IJ's rule, judgment, when it's not referring to a court order, say, it's referring to discretionary decisions. That's what Nizer explained in Montero-Martinez. And in this context, it's not referring to the judgment of a court. It's not referring to a court order. It's in the context that makes sense to read it as a discretionary determination. The accompanying provision, Romanet 2, clears that out when it uses the word other. It says any other decision or action. But that's by the Attorney General, not by necessarily any judgment, i.e., like an immigration judge. Immigration judges, Your Honor, are exercising the delegated authority of the Attorney General. So I think what you basically have in Romanet 1 is under the various forms of relief, those are granted by the Attorney General or by the Secretary of State. How do you then sort of deal with Section D that deals with it limits or eliminates judicial review shall be construed as precluding, is not construed as precluding review of constitutional claims or questions of law? How do you deal with that? It doesn't. That's a very specific exclusion, is it not, or exception, or carve-out. It's a very specific, I'd say, clarification. With respect to D, our position would be that discretionary decisions are different from legal issues or factual ones. They're just different in time. But it doesn't say they're factual. It says specifically questions of law. It doesn't say questions of fact or law. Right. And I'm saying you don't get there, Your Honor, because there's nothing barring, there's nothing in Part D that bars the review of the factual eligibility determinations. So there's not a bar for Part D to come in and lift, so to speak. Let me ask you something else. My colleagues have referred to judgment as what they have described as the legal meaning, that is the final paper, right? Doesn't every time that the Act refers to that type of thing, doesn't it refer to that as a final order as opposed to as a judgment? For example, in 8 U.S.C. 1252b9, it says, judicial review shall be available only in judicial review of a final order under this section. It doesn't say of a judgment under this section. But it's talking about the thing that I think my colleagues are referring to when they have used the term judgment. Would you agree with that? I think that's right, Your Honor. You see order, determination is the kind of thing that's coming out of the agency here. A final order. And I think judgment, what it's really talking about here is the order of a court when it's referring to the decision itself. The other meaning that you see in the INA a lot is, as I said, a matter of discretion. So I guess my question for you is, does the fact that final order instead of judgment is used to refer to this final decision, the ultimate decision, or the judgment in the case as my colleagues have been calling it, does that mean that Congress, when it intended to refer to what my colleagues are describing as the legal definition of judgment, used the term final order. And so when they referred to judgment, they meant the act of grace. They couldn't have meant the same thing as a final order because otherwise they would have used the term judgment instead of final order. I think here's what I would say. I would say that if they meant to borrow a view of the order, it would have made a lot more sense to just say no review of the order, period. Final order. What I'm having trouble saying is that it's hard to speak of the entirety of the INA because it's just vague. And I'd have to go back and kind of see all the uses of order. But I think your point about what A2B is focused on, judgment as in an exercise of discretion, is the right one. And what I'd say is that what this 1996 arrear of statute really focused on in a big way was protecting the discretionary guidance of the executive branch. That's what this provision is going after. Read in harmony in the context of the INA as a whole. How does the Supreme Court's decision in Kuchana, I think I'm pronouncing it correctly, inform your interpretation of this provision? I think it just confirms, Your Honor, that it really is focused on the matters of discretion. I mean, here's what, there's this language, and the case obviously addresses B2, but the court says this about B1. Each of the statutory provisions referenced in Clause I, which we referred to as I, addresses a different form of discretionary relief from removal, and each contains language indicating the decision is entrusted to the Attorney General's discretion. Right. The focus and the fact that those are, the interlocking nature of those, that they're all discretionary-based, the heading of here is denials of discretionary relief. Roman at 2 is expressly calling out discretion. All of this is showing that what Congress is going after was protecting exercises of discretion. Right here, the court continues. This is the Supreme Court speaking. The proximity of Clauses I and II and the words linking them, quote, any other decision, end quote, suggest that Congress had in mind decisions of the same genre, that is those made discretionary by legislation. Read harmoniously, both clauses convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute. Is that language consistent with your interpretation of the provision? It is, Your Honor. It's the same discretionary emphasis, and it does show why the factual findings here, or it does support, I should say, why the factual findings here are reviewable. If I can emphasize just for purposes of being clear on what kind of rule the court should adopt, I want to highlight one difference between myself and my friend's position. 1252A2B1. His position, my friend's position, is that it protects only the ultimate exercise of grace. That's not correct, and that does not give honor to the word any, I think, in the very encompassing language of that statute. We would say it's not just that ultimate exercise of discretion, it's other matters of discretion on the way. There are certain eligibility requirements that are not purely legal, not purely factual, but are themselves exercises of discretion. This court's decision in Gonzales-Oropesa is an example of that. It talks about in the cancellation of removal context, one of the eligibility requirements, exceptional and extremely unusual hardship. That's a discretionary matter. This court has repeatedly recognized that. Would you agree? Unless discretion is based on a factual finding and a legal principle, it becomes arbitrary, doesn't it? I don't think that's right, Your Honor. When we review anything for abuse of discretion, what do we ask? Your Honor, I think it's different when you have a pure bar on review. Just take the word discretion in making a decision. I don't disagree that on direct appeal. See whether or not it's based on erroneous fact findings or a misapplication of the law, don't we? In the ordinary case, yes, Your Honor. The Attorney General can't be arbitrary in granting grace, can he? Can he say to redheads, you're a redhead, we're not going to give you relief, but this blonde over here, we sure will. Your Honor, what I'm suggesting is that this court has recognized and other courts have recognized that matters that are purely entrusted to the executive branch of discretion, like that kind of a hardship. I understand that, but they don't exercise it arbitrarily. They exercise it pursuant to legal rules. Do you agree with that? It's different in this country. You think an immigration judge can just flip a coin? Your Honor, that may present a different issue. Without any explanation, no principle? That may present a different issue, Your Honor. What I can tell you, though, is this court has recognized correctly Well, because he's acting as the Attorney General. Do you agree? He's exercising that delegation. Whichever. If a judge just flipped a coin, though, that might present a constitutional problem that would take it out of the context anyway, right? Coin flips are... I mean, if you said this person's a redhead, so he can't come in, but this person's a blonde, so he can, that would be the type of issue that one might raise as a constitutional due process type issue or something. In other words, it wouldn't really fall under this. I think the point I'm trying to make, Your Honor, is that exceptional and extremely unusual hardships, some of these are like the final determination themselves. They're discretionary, so it's not just the ultimate... They're judgment calls. Judges do that all the time in bench trials. But the I.J. listens to facts, a whole body of facts, and then decides this is a hardship. Basically, that part of the law evolves like common law does it, not through the BIA cases. If you don't have explicit regulations on what is a hardship, they evolve from case to case. Isn't that the way they do? I'd have to recheck that. I'm not sure about the regulations. You have several cases coming up, and you cite cases. In this case, they granted relief. I think the distinction I brought to Judge Chopat is when a district judge makes a finding of discretion... He's exercising judgment. He's weighing the evidence, doing all those kinds of things. They come to a judgment. I'm also not aware, Your Honor, of a statute that says the district judge shall render the judgment in his sole and unreviewable discretion, no appellate. The unfettered discretion would be unconstitutional. That would be a different issue, Your Honor. Agree with that? I can't make a position on that, Your Honor. There are a lot of statutes that take unfettered discretion. Unfettered discretion? That allows widespread discrimination. Your Honor, courts all the time say that certain decisions are in unfettered discretion of certain decision-makers. I can't disclaim that across the board. I don't know of any. We review discretionary calls all the time, and we never resolve them by saying,  Again, this is a different context, Your Honor. This is a statute that explicitly says that these matters of discretion... I know that, but they're trying, the IJs are trying cases. They're adversarial proceedings. I don't see how that makes a difference. Okay. I may be missing it, but I think there is a distinction here because you have a very truncated, detailed and defined review system in an area that doesn't bring with it the normal... What you're saying is discretion means something entirely different when you're dealing with the immigration law than it does otherwise. I don't know. What I'm saying, Your Honor, is that there's a bar on judicial review of certain discretionary decisions, and that has meaning, and I don't know that that bar exists in a lot of other areas as well. Well, if the discretionary decision were arbitrary, you'd have a constitutional claim, and subsection D would allow you to bring it. I think what Judge Choflot is asking you, and if I'm wrong in characterizing him, I know he'll correct me. If you have a provision that bars judicial review of a discretionary decision by the Attorney General, but the decision-maker, whether it's the Attorney General himself or herself or the BIA or the IJ with delegated authority, makes a clear error of law, do you get to gut the jurisdiction-stripping provision? So, for example, you have a really, not only bad, but dumb decision-maker who says, you can't show extreme hardship because you're a redhead, and says it on the record on paper. Do you get review? Your Honor, I know that the answer seems like it should be an easy one. Well, I don't know what the answer is. I think that's what Judge Choflot is asking you. I can't necessarily agree with that because it's a hotly contested issue being presented in other cases as to whether a purely discretionary decision that's otherwise unreviewable would somehow become reviewable just because a reason is given that is invalid. I can't risk prejudicing other people. One possible answer to the question is that the jurisdiction-stripping provision as a statutory matter remains, but then the jurisdiction-stripping statute may become unconstitutional as applied. And so you get review over the decision because you've denied someone rudimentary due process under the Fifth Amendment through that sort of an arbitrary decision. Well, I would say, you do see that kind of a claim being made in these cases, and I think this Court, I believe it was in Gonzales-Oropesa as an example. I may be thinking of Martinez, but I think it's Gonzales, where you had a similar thing. Look, review is barred, but there is this constitutional claim. We need to see if it has any substantiality to it. But the result of finding constitutional error, the result is you upset the Grace decision. It's the consequence. Under D, there's a constitutional violation which is material to the decision or an erroneous construction of the statute. The consequence of finding that is to upset the ultimate decision, is it not? Your Honor, I understand. Isn't that the consequence? Your Honor, I cannot answer the question. Well, let's put it this way. You mean we would write a decision and find a constitutional violation and not upset the decision, the ultimate decision? Your Honor, what I'm saying is I don't — this case does not present a constitutional — Well, I'm just in the abstract. I cannot answer in the abstract. These issues are too important to answer in the abstract and to encourage a rule that may be wrong and not be applied correctly. I understand the frustration. I wish I could give you — But isn't that the whole point of Section D? I mean — That's what I was going to ask, too. What work does Section D do if it doesn't solve this problem? It does more work with respect to Section C because Section C bars review of aggregated — But why does it include B, then? It's more of a clarifying measure. It's saying nothing in this provision — that's what the language says. Nothing in some paragraph B or C and then dot, dot, dot, which limits or limits judicial review shall be construed as precluding review. As to B, it serves as a sort of rule of construction. So what we need is to do precluding review. Why would you do that? And as a matter of legislative history, if we can — This was added — D was added in the Real ID Act in 2005 as a response to the Supreme Court's ruling in St. Cyr where they expressed the concern that the statute might have suspension clause problems, right? Right, Your Honor. And I think it's sort of like, look, let's just be clear if I can finish here, Your Honor. Let's be clear by adding D. Like, this is not barred. It was meant to expand review as a response to St. Cyr to address the concerns of St. Cyr. Or make sure it was not unduly contracted. Thank you. Thank you, Mr. Stewart. Mr. Curzan, ban five minutes. I would like to go back to Judge Jordan's point in Kukana. I think Kukana is really a clear roadmap. I think Kukana says, with respect to only issues on B2, they are issues where they clearly specify to be in the discretion of the Attorney General. And I think that goes back to Judge Saldana's point on Curapati. Under B2, in that analysis, Curapati was correctly decided because it was an issue that was not a discretionary issue. In other words, B2 kind of sweeps up all decisions that are discretionary. But in Curapati, the decision was that it was a violation of a regulation. And a violation of a regulation is a nondiscretionary decision, just as the example you gave. Now, one could say that that falls under D. But in reality, as Curapati said, it doesn't even get to D because under 242.82Bii, that section says it's only discretionary. It's like other discretionary decisions. A violation of a regulation is not a discretionary decision. I part company with my colleague with respect to B1 because I think this has been the source of great confusion on B1 and B2. And I think, however anyone feels about the ultimate decision in Jimenez, I think Judge Marquette clearly and carefully laid out the way to analyze these sections, which is B1 is an act of pure discretion. And I would recommend to the Court, Montero and Martinez, as my colleague has, I think that's an excellent discussion of it. When you look at that decision, when you look at that decision in footnote 5, some of the instances that it identifies are statutes where Congress used the term, quote, discretionary judgment as opposed to, for example, any judgment, right? So Congress knew how to use the term to limit, to confine the use of judgment to discretionary decisions elsewhere in the immigration laws, right, by using the term discretionary judgment. Yes, but as they point out, and I want to save some of my time here, as they point out, we start out with the presumption of judicial review. So how is this statute interpreted in B1 to make sense under that presumption? Judgment is used sometimes. These are all acts that are clearly matters of grace. Even the Ninth Circuit recognized that the act uses the term judgment 8 out of the 13 times to refer to a final decision. Every one of the other instances where it's not a final decision, the act either uses the term discretionary judgment or independent judgment or it refers to the attorney general exercising, quote, his judgment, right? All different from any judgment. But any judgment modifies judgment. In other words, any judgment with respect to these five issues. But if I may, I would like to go on to the materiality issue because that was an issue not briefed before the panel opinion. And we believe that the common law is quite strong in determining that materiality is an element with respect to false representation. In other words, this statute says false representation. Black's Law Dictionary really says false representation is equal to a misrepresentation. Misrepresentation under Fedorenko and even under Kuhnjiang refers to something that has to be a material misrepresentation. See, I thought, I guess, sort of harkening back to my days as a practicing lawyer, I thought that misrepresentation was one element of a fraud claim. You've got a fraud claim. You've got to show a misrepresentation. That was material and induced reasonable reliance. So I view misrepresentation and materiality as two separate elements of a larger fraud claim, not that materiality is a necessary component of misstatement itself, or else the fraud cases would say would elide the materiality requirement because it would be included in misstatement. Go ahead. I think if you look at fields under the common law, I think if you look at the Fedorenko decision and the Netta decision that we cited in our brief, it's clear that they're all saying that when it has to do with a false representation, as opposed to a representation, as opposed to a false statement, a false representation, a misrepresentation, that it clearly does imply a materiality element and the courts have read that inconsistently in those cases. And in this case, it really makes a difference because remember the immigration judge really didn't want to hear any of the evidence with respect to the Georgia licensing and said I know enough about Georgia law. I don't have to hear anything about it. If this case goes on remand, that becomes a very, very important issue. We understand that, Mr. Kurzban, and your time is up. I note that you're court appointed, which means that you're working for the extremely reasonable rate of nothing. And for the benefit of your expertise, that is a very good bargain for the court. We appreciate that very much. It's an honor to be here, and it's probably my last argument, so I really appreciate it. Thank you. We're going to take a 10-minute recess now. We'll be back at, oh, what the hay. Let's go until 10 o'clock. All rise.